**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 16-cv-0282-WJM-STV

THOMAS DEAN TILLERY,

      Plaintiff,

v.

RICK RAEMISCH, Executive Director of the Colorado Department of Corrections,
JOHN CHAPDELAINE, Warden of the Sterling Correctional Facility,
JAMES FALK, Warden of the Limon Correctional Facility,
ROBERT DICK, Case Manager II of the Sterling Correctional Facility, and
LEONARD WOODSON, III, Director of SOTMP,

      Defendants.

---

**ORDER OVERRULING PLAINTIFF'S OBJECTION, ADOPTING IN PART AND
REJECTING IN PART THE NOVEMBER 7, 2016 RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION TO DISMISS**

---

Plaintiff Thomas Dean Tillery brings this 42 U.S.C. § 1983 case *pro se* against

Defendants Rick Raemisch, John Chapdelaine, James Falk, Robert Dick, and Leonard

Woodson III ("Defendants"), claiming violation of his Fourteenth Amendment rights.

This matter is before the Court on the November 7, 2016 Recommendation by U.S.

Magistrate Judge Scott T. Varholak ("Recommendation," ECF No. 27) that Defendants'

Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ("Motion," ECF No.

19) be granted in part and denied in part.  Plaintiff filed an objection to the

Recommendation.  ("Objection," ECF No. 28.)  No response was filed by Defendants.

For the reasons set forth below, Plaintiff's Objection is overruled, the Magistrate

Judge's Recommendation is adopted in part and rejected in part, and the Defendants'

Motion is granted in part and denied in part.

## I.  STANDARD OF REVIEW

When a magistrate judge issues a recommendation on a dispositive matter,

Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine de

novo any part of the magistrate judge's [recommendation] that has been properly

objected to."  Fed. R. Civ. P. 72(b)(3).  In conducting its review, "[t]he district court judge

may accept, reject, or modify the recommendation; receive further evidence; or return

the matter to the magistrate judge with instructions."  *Id*.  Here, Plaintiff filed a timely

objection to the Magistrate Judge's Recommendation.  *See* Fed. R. Civ. P. 72(b)(2).

Therefore, this Court reviews the issues before it *de novo*.

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to

dismiss a case by asserting that the court lacks subject-matter jurisdiction over the

claims in the operative complaint.  *See* Fed. R. Civ. P. 12(b)(1).  Rule 12(b)(1) motions

generally take one of two forms: a facial attack or a factual attack.  When reviewing a

facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations

of the complaint as true.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

When reviewing a factual attack on a complaint supported by affidavits and other

documents, the Court makes its own factual findings and need not convert the motion

to one brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *Id*. at 1003.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to

dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed R.

Civ. P. 12(b)(6).  In evaluating such a motion, a court must "assume the truth of the

plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

In addition, Plaintiff is proceeding *pro se*; thus, the Court must liberally construe his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007). The Court, however, cannot act as advocate for Plaintiff, who must still comply with the fundamental requirements of the Federal Rules of Civil Procedure. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1188 (10th Cir. 2003).

## II.  BACKGROUND

Neither party objects to the recitation of facts set forth by the Magistrate Judge in the November 7, 2016 Recommendation. (ECF No. 27 at 1–5.) Accordingly, the Court adopts and incorporates Sections I and II of that Recommendation as if set forth herein.

Briefly, Plaintiff is a prisoner and has been incarcerated at the Sterling Correctional

Facility ("SCF") at all times relevant to this litigation.  (ECF No. 6 at 2.)  Defendants are

employees of the Colorado Department of Corrections ("CDOC").  (*Id.*)  Plaintiff was

convicted on April 20, 2006, and was ultimately re-sentenced to two indeterminate

eight-year to life sentences, running consecutively.  (*Id.* at 6, ¶ 8.)  Thus, absent other

factors, Plaintiff could be eligible for parole in 2022.  Plaintiff alleges that as a convicted

sex offender he must progress through a sex offender treatment and monitoring

program ("SOTMP"), and that participation in the program "is an absolute prerequisite

for release to parole in Colorado."  (*Id.* at 5, ¶ 3 (citing Colo. Rev. Stat. § 18-1.3-

1006(1)(a)).)  Plaintiff alleges that CDOC has him incarcerated in a facility, SCF, that

does not offer the treatment program, and that CDOC "will not transfer prisoners to

other facilities for the purpose of *obtaining* treatment."  (*Id.* at 6, 8, ¶¶ 9, 10, 19

(emphasis in the original).)  Plaintiff also alleges that he has requested a transfer for

purposes of obtaining treatment, and has exhausted all of his administrative remedies.

(*Id.* at 18, 38.)  Plaintiff alleges due process violations because the CDOC's arbitrary

"denial of access to [the SOTMP] program has imposed an atypical and significant

hardship" on him in relation to the ordinary incidents of prison life "by rendering [him]

*ineligible for parole*."  (*Id.* at 8, ¶ 22 (emphasis in the original).)

### III.  ANALYSIS

The Magistrate Judge recommended that Defendants' Motion be granted in part

and denied in part.  (ECF No. 27 at 1.)  Specifically, the Magistrate Judge

recommended that Defendants' motion be granted to the extent it seeks "dismissal of

all claims for monetary relief" and "dismissal of all claims against Defendant Falk," but

denied to the extent it seeks "dismissal of claims for prospective injunctive and

declaratory relief against Defendants Raemisch, Chapdelaine, Dick, and Woodson."

(*Id.* at 16.)  The Magistrate Judge made several findings to reach that recommendation.

Plaintiff has specifically objected to the finding that he is not seeking monetary

damages.  (ECF No. 28 at 2.)  Where Plaintiff does not object to the Magistrate Judge's

findings, the Court reviews those findings under a "clearly erroneous" standard of

review.  The Court will now address the Magistrate Judge's findings and Plaintiff's

objection in turn.

## A.      Ripeness

This action raises a threshold question of ripeness because Plaintiff has filed this

action well in advance of his parole eligibility date.[1]  "[F]or a claim to be justiciable under

Article III, it must present a live controversy, ripe for determination, advanced in a clean-

cut and concrete form."  *Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1116 (10th Cir.

2008).  Although neither party has raised whether the absence of ripeness deprives this

court of jurisdiction, every federal court has an independent duty to examine its

jurisdiction at every stage of the litigation.  *See Steel Co. v. Citizens for a Better Env't*,

---

[1] As noted above, Plaintiff's parole eligibility date ("PED") is in 2022.  Pursuant to CDOC's Administrative Regulation ("AR") 700-19, an offender may be placed on the global waitlist eight years prior to their PED, and if they are within four years of their PED they may be transferred for treatment.  *See* AR 700-19 (June 6, 2016); *see also* Lifetime Supervision of Sex Offenders, Legislative Annual Report 2016, *available at* https://www.colorado.gov/pacific/cd oc/departmental-reports-and-statistics (last visited Jan. 13, 2017) ("Offenders must be within four years or less of their PED to be placed . . . on a statewide priority referral list for treatment. The statewide list ensures offenders are moved to a facility offering SOTMP when they are prioritized to start treatment.").  Plaintiff was placed on the global waitlist in 2012 (two years prior to the eight year mark), and should be prioritized for a transfer to a facility that offers treatment in 2018.

523 U.S. 83, 95 (1998); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Roe No. 2 v. Ogden*, 253 F.3d 1225, 1231 (10th Cir. 2001) (acknowledging that the ripeness doctrine has both constitutional and prudential components).

The ripeness requirement is meant "'to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498–99 (10th Cir. 1995) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)).  The main focus in determining if an issue is fit for judicial review is "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Id.*; *see also* Erwin Chemerinsky, Federal Jurisdiction 117 (Vicki Been *et al.* eds., 5th ed. 2007) (citing *Abbott Labs.*, 387 U.S. at 148) ("The ripeness doctrine seeks to separate matters that are premature for review because the injury is speculative and may never occur, from those cases that are appropriate for federal court action.").

The Court is concerned as to "whether the harm asserted [by Plaintiff ]has matured sufficiently to warrant judicial intervention."  *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975).  Instructive on the ripeness issue is the Ninth Circuit's decision in *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997).  In *Neal*, appellants sought reversal of the lower court's conclusion "that the inmates' ex post facto challenge to the [Sex Offender Treatment Program] was not ripe because neither inmate was eligible for parole under the terms of their sentences at the time the challenges were brought.  Therefore, neither inmate had suffered any harm by the speculative possibility that he might be denied parole eligibility sometime in the future."  *Id*. at 324.  The Ninth Circuit disagreed

with the lower court and found that the *ex post facto* claim was ripe for review.  *Id.* at

825.  The Ninth Circuit stated that "this is not a case that involves contingent future

events that may not occur as anticipated, or indeed may not occur at all . . . [because

plaintiffs] have already been labeled as sex offenders, and it is guaranteed that they will

not become eligible for parole if they do not successfully complete the required

treatment program."  *Id*.;  *but see Vega v. Lantz*, 2008 WL 3992651, at *10 (D. Conn.

Aug. 25, 2008) (plaintiff filed a lawsuit forty years prior to when he could be considered

for parole; the court noted that his "challenges of the conditions on his parole eligibility

and the effect of his Sex Offense Treatment Needs score on his parole eligibility are so

far in the future, and susceptible to possible changes, that they are not ripe for review at

this time").

The holding in *Neal* is quite applicable to the facts alleged here.  First, at the

motion to dismiss stage the Court must assume the veracity of the factual allegations in

Plaintiff's amended complaint.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff in the present case has alleged that he has been labeled a sex offender and

without demonstrating participation in SOTMP to the parole board he will be deemed

ineligible for parole—identical to the inmates in *Neal*.  Further, Plaintiff alleges that the

CDOC will never transfer him, or other inmates like himself at SCF, for purposes of

treatment.  (ECF No. 6 at 6, 8, ¶ ¶ 10, 19.)  Although a nearly threadbare allegation, the

Court notes that Defendants have never challenged this, or raised ripeness issues

suggesting Plaintiff's allegation is factually unsupported.  (*See generally* ECF No. 19.)

Therefore, accepting Plaintiff's factual allegations as true, the Court finds that this is not

a case that involves "contingent future events."  *See Neal*, 131 F.3d at 825.  Rather,

Plaintiff's denial of parole in 2022 is a definite event that will likely occur as anticipated.

Thus, the Court holds that in these circumstances Plaintiff's claims are ripe for review at

this time.

## B.      Eleventh Amendment Immunity

Defendants move to dismiss any claims for monetary damages brought against

them in their official capacities on the grounds that such claims are barred by the

Eleventh Amendment.  (ECF No. 19 at 4.)  In response, Plaintiff "concede[s] that the

Defendant's are immune from liability for monetary damages."  (ECF No. 24 at 3.)

Plaintiff goes on to state that "I am only seeking declaratory and injunctive relief."  (*Id.* at

4.)  Unsurprisingly, the Magistrate Judge found that Plaintiff is therefore "barred from

asserting a claim for damages against Defendants in their official capacities."  (ECF No.

27 at 7.)

In his Objection, Plaintiff argues that "I had never heard of this legal concept

before [*i.e*. Eleventh Amendment immunity], and I did my best to respond to it clearly

and fairly, but the magistrate misconstrued my argument concerning it."  (ECF No. 28 at

1.)  Plaintiff asserts that when he agreed with Defendants, that he was barred from

seeking damages, he actually "meant against the Defendants in their *official* capacities

because that is what [] Eleventh Amendment immunity deals with."  (*Id.* at 2 (emphasis

in the original).)  The Court agrees with the Magistrate Judge's interpretation of

Plaintiff's unambiguous later statement in his Objection—that he is now only seeking

equitable relief—despite what is pled in his earlier-filed amended complaint.  Even after

reviewing for context,[2] the Court finds that Plaintiff is judicially estopped from

contending that he continues to seek monetary damages in this action.  As a

consequence, the Court agrees with Judge Varholak's  recommendation that all claims

for monetary relief be dismissed.

Accordingly, Plaintiff's Objection to this portion of the Recommendation is

overruled and the Magistrate Judge's finding as to monetary damages and Eleventh

Amendment immunity is adopted.

## C.    Qualified Immunity

Defendants assert qualified immunity from the claims brought against them in

their individual capacities.  (ECF No. 19 at 13–15.)  "The doctrine of qualified immunity

protects government officials from liability for civil damages insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)

(internal quotation marks omitted).  Once a defendant asserts qualified immunity, the

Plaintiff must show: "(1) that the defendant's actions violated a federal constitutional or

statutory right, and, if so (2) that the right was clearly established at the time of the

defendant's unlawful conduct." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th

Cir. 2013); *see also Pearson*, 555 U.S. at 232.

Having previously found that Plaintiff is only suing Defendants for injunctive and

declaratory relief, the Magistrate Judge found the Defendants' argument moot, noting

that "Plaintiff makes no attempt to strip Defendants of their qualified immunity

---

[2] The Court notes that later in Plaintiff's Response, he restates that he is seeking injunctive and declaratory relief.  (*See* ECF No. 24 at 12.)

protections." (ECF No. 27 at 15.)[3]  The Court agrees with the Magistrate Judge's

reasoning and adopts this specific recommendation.  However, in adopting this finding,

the Court need not reach the Magistrate Judge's additional finding that qualified

immunity would be applicable in the instant action to the extent that the amended

complaint asserts claims for monetary relief against Defendants in their individual

capacities.

**D.     Due Process**

Defendants argue that Plaintiff has failed to state a claim for a violation of both

his procedural and substantive due process rights under the Fourteenth Amendment.

(ECF No. 19 at 10.)  More specifically, Defendants contend that Plaintiff has failed to

state any cognizable liberty interest because "[t]here is no entitlement to programs in

prison and an offender does not have a right to serve his or her sentence in a prison

facility of their choice."  (*Id.* at 11.)  Plaintiff asserts that he "has a liberty interest in

required SOTMP classes and that he cannot be deprived of that interest without due

process."  (ECF No. 6 at 6, ¶ 6.)  The Magistrate Judge found that Plaintiff's allegations

were sufficient to state procedural and substantive due process claims.  (ECF No. 27 at

12–15.)

      1.     <u>Procedural Due Process</u>

The Supreme Court has held that "[a]n essential principle of due process is that

a deprivation of life, liberty, or property 'be preceded by notice and an opportunity for

---

[3] In Plaintiff's response to Defendants' Motion, he reaches the same conclusion that "Defendants' qualified immunity argument is moot." (ECF No. 24 at 12.)  Specifically reiterating that he has "sued the Defendants in their official capacities for injunctive and declaratory relief. To that extent, qualified immunity does not apply."  *Id*.

hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1984).  A plaintiff alleging a claim under procedural due process must show: (1) "that he possessed a constitutionally protected liberty or property interest such that due process protections were applicable," and (2) "that he was not afforded an appropriate level of process."  *Zwygart v. Bd. of Cnty. Comm'rs*, 483 F.3d 1086, 1093 (10th Cir. 2007) (internal quotation marks omitted).  In the prison context, a liberty interest only arises when an aspect of the confinement amounts to an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  In determining whether a liberty interest created by state law warrants due process protection, this Court must assess the nature of the interest and whether its deprivation will cause the inmate to suffer "a 'grievous loss' of liberty retained even after . . . imprisonment."  *Sandin*, 515 U.S. at 480–81.  The Supreme Court has recognized that a "major change" in a prisoner's condition of confinement may amount to a "grievous loss" to the prisoner.  *See Wolff v. McDonnell*, 418 U.S. 539, 572 n.19 (1974).

In *Beebe v. Heil*, this Court found that an inmate had a liberty interest in not being terminated from the SOTMP, because the law requires an inmate to receive treatment and conditions parole on successfully progressing in the treatment program. *Beebe v. Heil*, 333 F. Supp. 2d 1011, 1016–17 (D. Colo. 2004).  In finding that the prisoner's allegations had stated a cognizable liberty interest for due process purposes, *Beebe* held that

> Colorado has created a scheme in which a sex offender is
> required to undergo treatment and in which the [CDOC]

> lacks discretion to withhold treatment.  *See* Colo. Rev. Stat.
> §§ 18-1.3-1004(3), 16-11.7-105.  The withholding of
> treatment, then, would work a "major change in the condition
> of Plaintiff's confinement," *Vitek* [*v. Jones*, 445 U.S. 480,
> 492 (1980)], since his status would change from 'eligible to
> be considered for parole' to "ineligible to be considered for
> parole."  Such a change would, without doubt, have a
> serious impact on a prisoner's morale, outlook, hope for the
> future, and motivation to pursue rehabilitation.  As such,
> there can be no serious dispute that the deprivation of
> treatment amounts "to a grievous loss to the inmate."  *Vitek*,
> [445 U.S. at 492]

*Beebe*, 333 F. Supp. 2d at 1017.

Defendants argue that the liberty interest recognized in *Bebee* should be

narrowly construed.  (ECF No. 19 at 11.)  Particularly as an "interest extended only to a

protection from being terminated from the treatment program" and not one providing

"that a sex offender has a right to placement within a program or [an entitlement] to

transfer to a facility where the program is being offered."  (*Id.*)

The Magistrate Judge disagreed and found that *Beebe's* "analysis focused on

the liberty interest created by a 'deprivation of treatment.'  The Court's reasoning is

equally applicable whether the deprivation occurs as the result of termination from the

program or being denied access to the program altogether."  (ECF No. 27 at 12.)

Assuming the truth of Plaintiff's factual allegations, the Magistrate Judge noted that

Plaintiff was asserting a "complete denial of access to the SOTMP, not a mere delay,"

that "in effect there is no wait-list," and as a result Plaintiff will never receive treatment

and will therefore never become eligible for parole.  (*Id.* at 13.)

This Court agrees fully with the Magistrate's Judge's analysis of *Beebe.*

Moreover, the Court agrees with the Magistrate Judge's conclusion that, as alleged,

Plaintiff's status has changed from eligible to ineligible for parole, and that this deprivation of treatment amounted to a "grievous loss" to Plaintiff, thereby implicating a protected liberty interest.

Finding no clear error in the Magistrate Judge's reasoning, the Court adopts his finding that "Plaintiff's allegations are sufficient to state a procedural due process claim." (*Id.* at 14.)

### 2.   Substantive Due Process

A substantive due process claim is "founded upon deeply rooted notions of fundamental personal interests derived from the Constitution." *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998). The concept of substantive due process is not fixed or final, *Rochin v. California*, 342 U.S. 165, 170 (1952), but generally is accorded to matters relating to marriage, family, procreation, and the right to bodily integrity, *see Albright v. Oliver*, 510 U.S. 266, 272 (1994).

The standard for judging a substantive due process claim is whether the challenged governmental action would "shock the conscience of federal judges." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998). To satisfy this standard, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing governmental power." *Id*. Instead, a plaintiff "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id*. "A substantive due process violation must be something more than an ordinary tort to be actionable under § 1983." *Abeyta By and Through Martinez v.*

*Chama Valley Indep. Sch. District, No. 19*, 77 F.3d 1253, 1257 (10th Cir. 1996).

Defendants argue that the CDOC's promulgation of AR 700-19 "for the purpose of managing and prioritizing those offenders on the sex offender treatment waitlist and applying the regulation to Plaintiff" does not "shock the conscience." (ECF No. 19 at 12.)  The Magistrate Judge points out that "Plaintiff alleges that those guidelines are not being followed and that no one is actually transferred for the purpose of receiving treatment.  As a result, Plaintiff alleges that he will never receive the SOTMP because he is housed in a facility that does not offer treatment, whereas individuals housed in facilities that offer the SOTMP are provided multiple opportunities to participate in the program.  Plaintiff further alleges that Defendants have made a conscious decision not to remedy this issue." (ECF No. 27 at 14 (citing ECF No. 6 at 7–15, ¶¶ 13, 19, 23–24, 34, 40, 46, 54, 58).)

Again, the Court finds no clear error in the Magistrate Judge's reasoning that these allegations sufficiently state a claim that "shocks the conscience" for substantive due process purposes.  Thus, the Court adopts the Magistrate Judge's recommendation that Plaintiff has sufficiently alleged facts supporting a claim for procedural and substantive due process.

**E.       Personal Participation**

Plaintiff raised no objection to the Magistrate Judge's finding that Plaintiff sufficiently alleged personal participation as to Defendants Rick Raemisch, John Chapdelaine, Robert Dick, and Leonard Woodson, but not as to Defendant James Falk. (ECF No. ECF No. 27 at 8–9, 11.)  The Court finds the personal participation analysis unnecessary, given the Magistrate Judge's finding that Plaintiff is only seeking equitable

relief.  Although Defendants make no objection, the Court may nonetheless review the

Magistrate Judge's recommendation "under any standard it deems appropriate."

*Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).  In these particular

circumstances, the Court finds that allowing the Magistrate Judge's conclusions on this

issue remain in the case would create future confusion in this litigation because

personal participation is irrelevant in cases where monetary relief is not requested.

Therefore, exercising its prerogative to review this limited issue *de novo*, the Court does

not adopt the Magistrate Judge's findings as to personal participation of the individual

Defendants.  However, the Court does agree with the Magistrate Judge's finding that

"Plaintiff's claims against Defendant Falk are moot," given that as warden of the Limon

Correctional Facility Defendant Falk no longer has the authority to provide Plaintiff with

any injunctive relief.  (ECF No. 27 at 11.)

Accordingly, the Court finds that Defendants' Motion is granted to the extent that

all Defendants are dismissed in their individual capacities, and to the extent that

Defendant James Falk is also dismissed in his official capacity.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff's Objection (ECF No. 28) to the Magistrate Judge's Recommendation is
   OVERRULED;

2. The Magistrate Judge's Recommendation (ECF No. 27) is ADOPTED in part and
   REJECTED in part as stated above;

3. Defendants' Motion to Dismiss (ECF No. 19) is GRANTED in part and DENIED
   in part as follows:

      a.      All claims for monetary relief against all Defendants are dismissed;

      b.      All Defendants are dismissed in their individual capacities;

      c.      Defendant Falk is dismissed in both his individual and official capacities, and the Clerk shall terminate him as a party; and

      d.      Defendants' Motion is otherwise denied;

4.      The Clerk and the Parties shall amend the caption of all future filings to comport with the Court's ruling as set forth above; and

5.      The Parties shall  prepare for and attend the Scheduling Conference currently scheduled before Magistrate Judge Scott T. Varholak on January 31, 2017. (ECF No. 32).

Dated this 18th day of January, 2017.

BY THE COURT:

William J. Martínez
United States District Judge