*Thomas Dean Tillery vs.*

*Rick Raemisch, et al.*

*Deposition of Rick Raemisch*

*October 17, 2017*



700 17th Street, Suite 1750
Denver, CO 80202
303-988-8470 (Office)   303-988-8478 (Fax)
SKReporting.com

Stevens-Koenig Reporting

**Page 1**

```
 1         IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLORADO
 2
    Civil Action No. 16-CV-00282-WJM-STV
 3  _____
 4  THOMAS DEAN TILLERY,
 5       Plaintiff,
 6  vs.
 7  RICK RAEMISCH, in his official capacity;
    MATTHEW HANSEN, in his official capacity;
 8  ROBERT DICK, in his official capacity;
    LEONARD WOODSON III, in his official capacity;
 9
         Defendants.
10  _____
11
              DEPOSITION OF RICK RAEMISCH
12
                  October 17, 2017
13
    _____
14
    APPEARANCES:
15
    ON BEHALF OF THE PLAINTIFF:
16       ZACHARY D. WARREN, ESQ.
         Highlands Law Firm LLC
17       3773 Cherry Creek Drive North, Suite 575
         Denver, Colorado 80209
18       Phone:  720-722-3880
         Email:  zwarren@highlandslawfirm.com
19
20  ON BEHALF OF THE DEFENDANTS:
         ROBERT C. HUSS, ESQ.
21       Office of the Attorney General
         Colorado Department of Law
22       1300 Broadway, Tenth Floor
         Denver, Colorado 80202
23       Phone:  720-508-6605
         Email:  rob.huss@coag.gov
24
25
```

**Page 2**

```
 1         PURSUANT TO WRITTEN NOTICE and the appropriate
 2  Rules of Civil Procedure, the deposition of RICK
 3  RAEMISCH, called for examination by the Plaintiff, was
 4  taken at the offices of the Colorado Department of
 5  Corrections, 1250 Academy Park Loop, Colorado Springs,
 6  Colorado, commencing at 10:04 a.m., on October 17, 2017,
 7  before Carol M. Bazzanella, RPR, CRR, a Notary Public in
 8  and for the State of Colorado.
 9                    I N D E X
10  EXAMINATION:                                      PAGE
11     By Mr. Warren                                  3, 35
12     By Mr. Huss                                    33
13  EXHIBITS:                                         PAGE
14   A    Colorado Department of Corrections          13
        Administrative Regulation 700-19
15
     B    Colorado Department of Corrections          14
16       Administrative Regulation 700-32
17   C    Chapter 4, Sex Offender Treatment           18
         and Monitoring Program
18
     D    C.R.S. 18-1.3-1004. Indeterminate           22
19       sentence
20
21
22
23
24
25
```

**Page 3**

              P R O C E E D I N G S
                  RICK RAEMISCH,
having been first duly sworn, was examined and testified
as follows:
                    EXAMINATION
BY MR. WARREN:
        Q.    Good morning. My name is Zach Warren, and I'm going to be taking this deposition on behalf of my client, Thomas Tillery, who is currently in the custody of the Department of Corrections and incarcerated at Sterling Correctional Facility. If you could please introduce yourself and spell your last name?
        A.    Yes. I am Rick Raemisch. I'm the Executive Director of the Colorado Department of Corrections. My last name is spelled R-a-e-m-i-s-c-h.
        Q.    Is there any reason that you're aware of that you would be unable to testify clearly and truthfully today?
        A.    No.
        Q.    Have you had an opportunity to speak with counsel prior to this deposition regarding this case and the subject matter of your deposition?
        A.    Yes.
        Q.    Did you do anything to prepare for this deposition, aside from speaking with counsel?

**Page 4**

        A.    I reviewed the original complaint, and I also reviewed a letter that Mr. Tillery had sent to our office.
        Q.    And that was a letter dated 2015; is that right?
        A.    Yes.
        Q.    Okay. You've taken depositions before, obviously?
        A.    Yes.
        Q.    And so one of the things we'll try to do is to provide time for one another to ask a question and then answer without speaking over one another. I would also ask that you only answer if you know the answer to my question. In other words, it's important not to guess or speculate. And if you need me to clarify anything, obviously, I'm happy to do so. Okay?
        A.    I understand.
        Q.    Also, if you need to take a break for any reason, we're happy to accommodate that; please just let me know. And we would only ask that we take breaks after you've provided an answer to a pending question. But aside from that, we can use breaks liberally and ensure that everybody has a comfortable experience.
        A.    Thank you.
        Q.    I'm hoping you can help me understand a

Case No. 1:16-cv-00282-WJM-STV   Document 74-4   filed 02/06/18   USDC Colorado
pg 3 of 17

Thomas Dean Tillery vs.
Rick Raemisch, et al.

Deposition of Rick Raemisch
October 17, 2017

Page 5

1  little bit about decision authority within the Department
2  of Corrections, and specific to your role as the
3  executive director with respect to programs.  So I know
4  that your formal job description is probably 300 pages
5  long, but would you be willing to provide a very brief,
6  high-level explanation of your responsibilities when it
7  comes to providing offender programming within the
8  Department of Corrections?
9      A.   Yes.  I have -- obviously, I have
10 decision-making authority over programs.  Typically I
11 leave that up to my subject matter experts to determine
12 what the best program is and where it should go.  There
13 may be particular programs that I have a keen interest in
14 that I would say that I want this program to -- that the
15 Department of Corrections will have this particular
16 program.  Then it goes through a -- call it a cycle of
17 where it should go and who should be running it, and
18 that's typically decided beneath me.
19      Q.   You mentioned that you have a keen
20 interest in a few specific programs.  Would you count sex
21 offender treatment and monitoring as one of those
22 programs?
23      A.   I should clarify that I'm interested in
24 all the programs, but -- and so, obviously, the sex
25 offender program would be one of them.  But those that

Page 6

1  have been established prior to me getting here, I
2  typically -- that's not high on my priority list to do
3  things with, because they've already been established.
4      Q.   So you were more referencing new
5  programming that you would want to bring based on your
6  experience and your perceived needs for the department?
7      A.   Correct.
8      Q.   Given that you rely on the recommendations
9  of departmental personnel who have been here previous to
10 your tenure, have you had any input into the specific
11 site locations at which the Department will offer Sex
12 Offender Treatment and Monitoring Program services?
13     A.   No.
14     Q.   For the sake of efficiency, there are a
15 number of acronyms involved in this case that are a
16 little cumbersome, so instead of saying, "Sex Offender
17 Treatment and Monitoring Program," can we just refer to
18 that as "the Program" or "SOTMP"?  Would that be clear to
19 you?
20     A.   Yes.
21     Q.   Okay.  Great.  I think one of your
22 responsibilities is to think about funding for
23 departmental programs and how to direct those funding
24 resources, correct?
25     A.   Yes.

Page 7

1      Q.   Can you give me, again, just a general,
2  high-level sense of how you request funding and then
3  direct that funding to specific departmental programs?
4      A.   Well, there's a budgetary process that we
5  go through where there is input from the division
6  directors on what they desire for their individual
7  divisions.  Once that's determined, there's a priority
8  list where you go through -- we go through it as a group
9  and then present that budget to the governor's office,
10 where things may be added or deleted, depending on what
11 they want.  And then once we have that budget, we take it
12 before the Joint Budget Committee.
13     Q.   And when you say, "division directors,"
14 can you be more specific?
15     A.   Yes.  We have the division -- the director
16 for the Division of Prisons is Travis Trani, the director
17 of the Division of Parole is Melissa Roberts, the
18 director of Programming Services is Renae Jordan, and the
19 director of -- basically our budget is Jennifer Bennett.
20     Q.   So if there were concerns about funding
21 priorities regarding programs at the Department of
22 Corrections, you would likely rely on Renae Jordan to
23 highlight those issues and to bring those issues to your
24 attention, correct?
25     A.   Well, to my deputy's attention, which

Page 8

1  would then come to me.
2      Q.   Okay.  And can you remind me your deputy's
3  name?
4      A.   Kellie Wasko.
5      Q.   And so between yourself and your deputy
6  and the division directors, you will collectively come up
7  with a list of priorities for funding?
8      A.   Yes.
9      Q.   One of the issues in this case is the
10 manner in which the Department of Corrections is
11 prioritizing individuals with certain qualifying sex
12 offenses to participate in SOTMP.  It's my understanding
13 that the Department recently made a budget request
14 relative to SOTMP, correct?
15     A.   I don't recall.
16     Q.   Based on previous deposition testimony,
17 it's my understanding, and please correct me if I'm
18 wrong, that the Department of Corrections requested
19 additional funding for personnel to staff the SOTMP
20 within the last couple of years?
21     A.   That's where my -- my problem was; I
22 didn't realize the definition of "recent."  But, yes.
23 Within the last couple of years, yes.
24     Q.   Okay.  In order for that request to
25 ultimately land with the Joint Budget Committee, there

Case No. 1:16-cv-00282-WJM-STV   Document 74-4   filed 02/06/18   USDC Colorado
pg 4 of 17

Thomas Dean Tillery vs.                                                         Deposition of Rick Raemisch
Rick Raemisch, et al.                                                                    October 17, 2017

Page 9

1  must have been some sort of internal deliberative process
2  at the Department of Corrections, correct?
3       A.   Yes, there would have been.
4       Q.   Do you remember how this budget request
5  came to light within those meetings among yourself and
6  the deputy director and the division directors?
7       A.   I was told prior to me coming here that
8  the sex offender programming had been critiqued and
9  criticized, and there were things taken to try and
10 correct those criticisms.
11      Q.   Are you referring to the audit by the
12 Colorado state auditor, perhaps?
13      A.   There was one other audit done, I believe,
14 by an independent auditor.
15      Q.   This is the independent group out of
16 California, correct?
17      A.   Yes.
18      Q.   So at some point within the last two years
19 there was a meeting among yourself and the deputy
20 director and the division directors where you discussed
21 the findings of this external audit, and you subsequently
22 sought funding to help remediate those deficiencies; is
23 that right?
24      A.   I don't recall if that was done prior to
25 me arriving or afterwards.  I know at the time the

Page 10

1  original report came out that there was a lot done to try
2  and remedy the problems.
3       Q.   You're not practicing law in your current
4  capacity, correct?
5       A.   Correct.
6       Q.   But you have a legal background; is that
7  right?
8       A.   I do have a law degree, yes.
9       Q.   Are you familiar with any of the cases
10 coming out of the state of Colorado, whether in Colorado
11 state courts or the United States District Court for the
12 District of Colorado, regarding the provision of sex
13 offense treatment to qualifying offenders?
14      A.   No.
15      Q.   You've never heard of a case called Beebe
16 v. Heil, which involved an individual who was
17 participating in the SOTMP, but was then terminated from
18 the Program?
19      A.   I recall the name Beebe, but I don't
20 recall the circumstances that I saw the name.
21      Q.   Okay.  Let's talk a little bit about
22 Mr. Tillery's case.  Mr. Tillery is my client and is
23 serving an indeterminate sentence for a sex offense here
24 in Colorado.  Do you understand the difference between a
25 determinately sentenced individual and an indeterminately

Page 11

1  sentenced individual?
2       A.   Yes.
3       Q.   Are you familiar with the statutory
4  authority for the sentencing regime for sex offenders
5  here in Colorado?
6       A.   Somewhat.
7       Q.   Are you familiar with the Lifetime
8  Supervision Act?
9       A.   Yes.
10      Q.   And that act requires the Department to
11 provide the SOTMP to individuals who are indeterminately
12 sentenced, correct?
13      A.   Yes.
14      Q.   Mr. Tillery is one of seemingly hundreds
15 of individuals who is qualified for the SOTMP, in terms
16 of his institutional behavior and other issues that are
17 considered in evaluating someone's appropriateness to
18 participate in the Program, and he has, in fact, been
19 referred to the Program because it is clinically
20 appropriate for him to participate.  However, like
21 hundreds of other inmates who are similarly situated, he
22 has not yet been able to access the SOTMP because he is
23 on the Global Referral List.  Are you familiar with the
24 Global Referral List?
25      A.   Yes.  Somewhat.

Page 12

1       Q.   Can you explain the basic mechanics of the
2  Global Referral List and its purpose?
3       A.   It's my understanding that it was to
4  remedy some of the criticisms that came out of the -- out
5  of the initial reports, which was long waiting lines, and
6  that there was a decision made to put people on a list
7  that were, I believe, four years from parole eligibility.
8       Q.   And that list, at least ostensibly,
9  considers a number of factors in assigning priority for
10 treatment, correct?
11      A.   I leave -- I don't know.
12      Q.   To your knowledge, what is the
13 relationship between the provision of sex offender
14 treatment to individuals with indeterminate sentences and
15 their prospects for parole?
16      A.   I don't know the answer to that.
17      Q.   For someone with an indeterminate sentence
18 for a sex offense who has successfully progressed in the
19 Sex Offender Treatment and Monitoring Program versus
20 someone who has not participated in the Program at all,
21 would you say the chances for parole are higher for the
22 participant or for the person who has not participated in
23 the Program?
24      A.   I would be making an assumption.  That
25 would be up to the parole board.

Case No. 1:16-cv-00282-WJM-STV   Document 74-4   filed 02/06/18   USDC Colorado
pg 5 of 17

Thomas Dean Tillery vs.
Rick Raemisch, et al.

Deposition of Rick Raemisch
October 17, 2017

Page 13

1  Q.  Is the Department of Corrections -- let me
2  rephrase that.
3       As the Executive Director of the
4  Department of Corrections, have you communicated with the
5  parole board or any agent of the parole board regarding
6  the effect of sex offender treatment on prospects for
7  parole?
8  A.  No.
9  Q.  Are you familiar with the L designation
10 for sex offenders?
11 A.  Slightly.
12      (Deposition Exhibit A was marked.)
13 Q.  Would you mind reading the regulation
14 number?
15 A.  700-19.
16 Q.  Are you familiar with Administrative
17 Regulation 700-19?
18 A.  Verbatim, no.
19 Q.  Do you understand the general purpose of
20 Regulation 700-19?
21 A.  Yes.
22 Q.  I'd like to turn your attention to page 3
23 of 700-19, and subsection B8, which is titled "L-Low."
24 If you could just take a moment to familiarize yourself
25 with that section.  No need to read it aloud.

Page 14

1       (The deponent perused the exhibit.)
2  A.  Okay.
3  Q.  So this subsection deals with, quote, "low
4  resource priority," end quote, offenders who represent
5  relatively low risk of sexual recidivism.  Are you
6  familiar with the difference between sex offenders with
7  an L designation versus other sex offenders who are
8  indeterminately sentenced?
9  A.  I know that there are differences, yes.
10 Q.  Are you familiar with the Department's
11 current practice of recommending offenders with an L
12 designation as appropriate for parole without any
13 treatment whatsoever in the SOTMP?
14 A.  Typically I leave the day-to-day
15 operations up to my deputy executive director.  And for
16 situations like that, to make those decisions I leave to
17 my subject matter experts.  I tend to be, in my position,
18 more external orientated than internal.
19 Q.  I'm going to hand you a different
20 administrative regulation.
21      (Deposition Exhibit B was marked.)
22 Q.  Can you read the regulation number,
23 please, Mr. Raemisch?
24 A.  700-32.
25 Q.  And can you read the subject line as well?

Page 15

1  A.  "Sex Offender Review of Termination From
2  Treatment."
3  Q.  Are you familiar with this regulation at
4  all?
5  A.  Somewhat.
6  Q.  Solely for the purposes of description,
7  this administration -- this administrative regulation,
8  rather, deals with terminating someone from treatment
9  within the SOTMP, correct?
10 A.  Correct.
11 Q.  Are you familiar about the circumstances
12 that gave rise to this administrative regulation?
13 A.  No.
14 Q.  Are you familiar with the connection
15 between this administrative regulation and the Beebe v.
16 Heil case?
17 A.  No.
18 Q.  We're going to change gears a little bit
19 and talk about the Global Referral List.  Okay?
20 A.  Yes.
21 Q.  Do you have any idea about how many
22 offenders are currently awaiting treatment on the Global
23 Referral List for the SOTMP?
24 A.  I don't know the exact number.  I know
25 it's several hundred.

Page 16

1  Q.  Are you aware that some of the offenders
2  currently awaiting treatment for the SOTMP are beyond
3  their parole eligibility date, having never participated
4  at all in the Program?
5  A.  I believe, if Mr. Tillery's letter is
6  correct, then he would be one.  I'm not aware of any
7  others.
8  Q.  You have not received any correspondence
9  from other inmates regarding this issue that you're aware
10 of?
11 A.  I may have, but correspondence directed to
12 me rarely gets to me.
13 Q.  Have you received any correspondence or
14 any contact with advocacy groups or family members of
15 inmates who have been unable to access the SOTMP?
16 A.  Not directly, that I can recall.
17 Q.  Are you familiar with a group called CSOR?
18 A.  Yes.
19 Q.  Do you have any general idea of their
20 mission?
21 A.  I can't -- I don't feel comfortable
22 commenting on what their mission may be to them.
23 Q.  Okay.  You mentioned earlier that you read
24 the original complaint in Mr. Tillery's case, correct?
25 A.  Yes.

Case No. 1:16-cv-00282-WJM-STV    Document 74-4    filed 02/06/18    USDC Colorado
pg 6 of 17

Thomas Dean Tillery vs.
Rick Raemisch, et al.

Deposition of Rick Raemisch
October 17, 2017

Page 17

1  Q. And you're aware that there are two
2  remaining claims in his case, correct?
3  A. Yes.
4  Q. And those claims are procedural due
5  process violations and substantive due process
6  violations, right?
7  A. Yes, as named in the complaint.
8  Q. Did any of the allegations in
9  Mr. Tillery's original complaint surprise you?
10  A. I'm not sure in what sense that would be.
11  Q. Did you learn anything about the system
12  for prioritizing individuals for participation in the
13  SOTMP based on his complaint that you didn't know
14  beforehand?
15  A. With additional information, yes.
16  Q. And what exactly did you learn by virtue
17  of reading that complaint and then the additional
18  information you sought subsequently?
19  A. That because of his sentence change, and
20  at the time that they went to the Global Referral List,
21  there was a space in time, so to speak, where he
22  somewhat, in my impression, fell through the loop.
23  Q. Just to refresh my own recollection, do
24  you specifically remember receiving the letter that
25  Mr. Tillery sent you in 2015?

Page 18

1  A. I did not receive that letter until
2  recently. Those letters do not go to me.
3  MR. WARREN: Understood. Thank you for
4  that. Let's go ahead and take a brief break. We're
5  coming up on the half-hour interval that we discussed.
6  And we'll come back in approximately ten minutes.
7  THE DEPONENT: Thank you.
8  (Recess taken, 10:30 a.m. to 10:34 a.m.)
9  (Deposition Exhibit C was marked.)
10  Q. (By Mr. Warren) Mr. Raemisch, can you
11  read the title of Chapter 4 of Exhibit C before you?
12  A. "Sex Offender Treatment and Monitoring
13  Program."
14  Q. Do you recognize this document?
15  A. Yes.
16  Q. Okay.
17  MR. WARREN: I apologize; I thought I had
18  additional copies.
19  MR. HUSS: I have the one from yesterday,
20  so that's fine.
21  MR. WARREN: Do you have one? Okay.
22  Q. (By Mr. Warren) Do you remember receiving
23  this audit or discussing it with your management-level
24  staff?
25  A. I remember a verbal discussion about what

Page 19

1  was being done to rectify the problems, but I don't
2  recall specifically discussing the report itself.
3  Q. Do you have any sense of the general cost
4  of confining someone within the Colorado Department of
5  Corrections over the course of a single year?
6  A. I've heard figures from approximately
7  34,000 to 50-some thousand.
8  Q. It's an expensive proposition, obviously?
9  A. Yes.
10  Q. And it's part of the reason that, under
11  your guidance, the Department has undertaken efforts to
12  transition folks to community and to parole where
13  possible, correct?
14  A. Yes.
15  Q. Would you agree that there's a bottleneck
16  for treatment and participation in the SOTMP that causes
17  some individuals to remain incarcerated beyond the time
18  at which it may be appropriate for them to transition to
19  community or to parole?
20  A. I can't say whether it would be
21  appropriate. I can say that there is, obviously, a
22  Global Referral List that one could consider somewhat of
23  a waiting list, yes.
24  Q. As a matter of efficiency and fairness, as
25  the Executive Director, would it not be optimal to

Page 20

1  transition folks to community or to parole if it is
2  appropriate?
3  A. If appropriate includes safe and low risk,
4  then yes.
5  Q. That would be beneficial from a financial
6  standpoint, correct?
7  A. Yes.
8  Q. It would be beneficial from a public
9  safety standpoint, correct?
10  A. Yes.
11  Q. And it would be beneficial from a
12  humanitarian standpoint, too, correct?
13  A. Yes. If it could be done safely, correct.
14  Q. I recognize that you have content area
15  professionals working underneath you, and part of their
16  responsibility is to track research and best practices
17  relative to treatment, correct?
18  A. Yes.
19  Q. Are you, yourself, familiar with any of
20  the research surrounding the appropriate dosage of
21  treatment for low-risk sex offenders?
22  A. Vaguely.
23  Q. Can you explain what you know in brief?
24  A. What I've been told and what has been
25  discussed is that very low-risk sex offenders can be

Case No. 1:16-cv-00282-WJM-STV    Document 74-4    filed 02/06/18    USDC Colorado
pg 7 of 17

Thomas Dean Tillery vs.
Rick Raemisch, et al.

Deposition of Rick Raemisch
October 17, 2017

Page 21

1  successfully treated in the community.
2      Q.    From your perspective, is it within the
3  discretion of the Department of Corrections to make the
4  determination about which offenders are appropriate to
5  participate in the SOTMP versus which offenders would not
6  benefit from program participation?
7      A.    I don't know.
8      Q.    From your perspective, does the Department
9  have discretion when it comes to providing the Sex
10 Offender Treatment and Monitoring Program to sex
11 offenders with indeterminate sentences?
12     A.    My answer would be an assumption.
13     Q.    And why do you say that?
14     A.    I would be, frankly -- again, I leave
15 these things up to my subject matter experts, and so
16 specifically I don't know the answer.  My assumption, if
17 you want an assumption, is that yes, we do have that
18 discretion.
19     Q.    If Sex Offender Treatment and Monitoring
20 Program services were mandatory by statute, the
21 Department would do everything it could to comply with
22 that statute, correct?
23     A.    Yes.
24     Q.    And the administrative regulations are
25 ultimately under your decision authority, correct?

Page 22

1      A.    Yes.
2      Q.    And those administrative regulations are
3  designed to carry out the legal responsibilities
4  articulated in statute, correct?
5      A.    In some areas, yes.
6      Q.    Can you say more about that?
7      A.    Well, our administrative regulations can
8  also cover regulations that are not statutory, but that
9  we want followed.
10     Q.    If there is a specific statute that is
11 relevant to operating the Department of Corrections, it
12 would be incumbent on the executive director to ensure
13 that there is an administrative regulation in compliance
14 with that statute, right?
15     A.    Yes.
16     Q.    I'd like to hand you . . .
17           (Deposition Exhibit D was marked.)
18     Q.    . . . a printout of a statute from the
19 Colorado Revised Statutes.  Can you please read the
20 statutory number and the title of the statute?
21     A.    The statutory number is C.R.S.
22 18-1.3-1004.  And what was the --
23     Q.    The name, if you would.
24     A.    Title 18 of the criminal code.  It's
25 the -- the one cited is the indeterminate sentence.

Page 23

1      Q.    Could you please turn to page 2 and
2  subsection 3 and read that provision?
3      A.    "Each sex offender sentenced pursuant to
4  this section shall be required, as a part of the
5  sentence, to undergo treatment to the extent appropriate
6  pursuant to Section 16-11.7-105 C.R.S."
7      Q.    Do you read the word "shall" in that
8  subsection as compulsory?
9      A.    Yes.
10     Q.    Do you see anything in this statute -- and
11 please take your time to familiarize yourself with the
12 rest of the statute if necessary -- that would place the
13 provision of the Sex Offender Treatment and Monitoring
14 Program within the discretion of the Department of
15 Corrections?
16     A.    I read the statement, "to the extent
17 appropriate pursuant to Section 16-11.7-105," which I
18 would have to look at.
19     Q.    Thank you for that.  Let's shift gears a
20 little bit and talk about your decision authority to
21 effectuate changes relative to individual offenders.  Can
22 you think of any instances in your tenure as the
23 executive director where you have made an exception to
24 the rule, whatever rule that may be, to ensure that a
25 specific offender is treated fairly?

Page 24

1      A.    I don't recall a specific circumstance,
2  but I know when inmate issues are brought to me or get to
3  me, that I do have them looked into to see if they were
4  handled correctly.
5      Q.    And when you say, "handled correctly," do
6  you mean that you ensure that the Department's policies
7  were followed with respect to that inmate?
8      A.    That, but in the sense that depending on
9  circumstances, I do try to be fair when things are
10 brought before me.
11     Q.    Is it within your decision authority to
12 change an individual inmate's priority on the Global
13 Referral List for the SOTMP?
14     A.    I don't know.
15     Q.    Have you ever requested that an individual
16 on the Global Referral List receive a different priority?
17     A.    Not that I can recall.
18     Q.    Given that Mr. Tillery has been a model
19 inmate, in the sense that he has never had a disciplinary
20 infraction, has never caused any management issues, does
21 not have any medical or mental health needs that would
22 prohibit him from participating in the Program, and that
23 he is beyond his parole eligibility date and that his
24 parole was denied, at least in part, because of his
25 inability to participate in the Program, would you

Case No. 1:16-cv-00282-WJM-STV   Document 74-4   filed 02/06/18   USDC Colorado
pg 8 of 17

Thomas Dean Tillery vs.                                                    Deposition of Rick Raemisch
Rick Raemisch, et al.                                                              October 17, 2017

Page 25

 1  consider requesting a different priority slot for him on
 2  the Global Referral List?
 3       A.   I would consider discussing the
 4  feasibility of doing that with my staff, to ensure that
 5  if I were to do something like that, that I would not
 6  have some massive domino effect occurring.
 7       Q.   When you make a request of your staff, do
 8  you get the sense they seriously consider your request?
 9       A.   Yes.
10       Q.   Do they do their best to carry it out
11  whenever possible?
12       A.   They do their best to make sure I have the
13  correct information to make the right decision, in my
14  mind.
15       Q.   Let's talk a little bit about specific
16  site locations for the SOTMP.  Currently the Program is
17  offered at some facilities, but not others.  We know
18  through previous deposition testimony and through
19  discovery in this case that there are a large number,
20  literally hundreds, of individuals on the Global Referral
21  List placed at Sterling Correctional Facility currently,
22  and yet Sterling Correctional Facility does not offer the
23  SOTMP.  Why not offer the Program at Sterling?
24       A.   Historically, it's my understanding that
25  it was at one time, but because they had a continual

Page 26

 1  80 percent staff vacancy rate, that they moved it to a
 2  facility where they could staff the Program.
 3       Q.   So staffing and personnel issues are a
 4  critical piece to this issue?
 5       A.   Yes.  And budgetary issues.
 6       Q.   Can you speak a little bit to the
 7  budgetary issues as well?
 8       A.   Well, for instance, I had approximately
 9  $12 million taken off my budget this year.  If that goes
10  through, it creates shortages.
11       Q.   The primary driver for your budget is
12  staffing and personnel, correct?
13       A.   Yes.
14       Q.   It sounds like it's easier to find
15  qualified staff in the more metropolitan areas, including
16  Colorado Springs and Denver, correct?
17       A.   Typically.
18       Q.   Do you know if that's true specific to sex
19  offender treatment?
20       A.   I do not.
21       Q.   When considering the site location for
22  specific services or programs, has the Department
23  considered placing the more resource-intensive programs
24  in the more -- let me rephrase that.
25           Are there any reasons why the Department

Page 27

 1  couldn't focus SOTMP programming within the more urban
 2  areas in the state?
 3       A.   There could possibly be, depending on
 4  program space and availability of program space.
 5       Q.   Does the Department sometimes contract
 6  with private providers to increase capacity?  Both in
 7  terms of bed space and program services.
 8       A.   Yes.
 9       Q.   Are you aware of the recent acquisition by
10  GEO Group of the facility formerly known as the Cheyenne
11  Mountain Reentry Center?
12       A.   Yes.
13       Q.   And was part of the decision to contract
14  with GEO Group related to the provision of the SOTMP?
15       A.   Ultimately that's what happened.  I don't
16  know what discussions were held to make that occur.
17       Q.   Instead, was it driven by purely a
18  capacity issue and bed space, as opposed to any specific
19  programming?
20       A.   Well, it was discussed that there was --
21  if they had the space, that a sex offender program would
22  be a good way to utilize it.  And they're having
23  difficulty staffing.
24           MR. WARREN:  Let's take a very brief
25  break.

Page 28

 1           (Recess taken, 10:54 a.m. to 11:01 a.m.)
 2       Q.   (By Mr. Warren)  The Department of
 3  Corrections has recently undertaken a number of
 4  significant initiatives, including moving to minimize or
 5  eliminate altogether solitary confinement, correct?
 6       A.   Yes.
 7       Q.   And during your tenure, your department
 8  has instituted a number of large-scale reforms, correct?
 9       A.   Yes.
10       Q.   And many of those reforms were motivated,
11  at least in part, because of concerns regarding the
12  potential constitutionality of certain conditions of
13  confinement, right?
14       A.   I guess I would have to ask in what sense?
15       Q.   What different factors motivated you to
16  move away from solitary confinement as a tool within the
17  Department?
18       A.   When I was the secretary of the Wisconsin
19  Department of Corrections, I began to get interested in
20  the overuse of solitary for those that were suffering
21  from mental illness and had initiated some programs there
22  to eliminate that.  One of the reasons I was hired here
23  by Governor Hickenlooper was to continue the reforms of
24  the overuse of solitary confinement in Colorado in a
25  number of different areas.

Case No. 1:16-cv-00282-WJM-STV    Document 74-4    filed 02/06/18    USDC Colorado
pg 9 of 17

Thomas Dean Tillery vs.
Rick Raemisch, et al.

Deposition of Rick Raemisch
October 17, 2017

Page 29

1  The constitutional issue that -- the only
2  one that really arose during the period when I got here
3  was I was told that two years prior to me coming here,
4  our outdoor recreation at Colorado State Penitentiary had
5  been declared unconstitutional, and so that really had
6  nothing to do with the drive for reform.  To me, the
7  drive for reform was because the data and the studies
8  were becoming so strong of the mental and physical harm
9  of those being in solitary for extended periods of time,
10 that I felt that in a number of instances we had gotten
11 away from our primary mission, which was public safety,
12 and that by lessening the use or abolishing the use of
13 solitary, we would have safer institutions as a result of
14 that; and as a result of that, safer communities.
15     Q.   So your primary motivation is public
16 safety, and in the service of public safety, managing the
17 Department in a way that is efficient and creates a safer
18 environment for those both within the Department and in
19 the communities, correct?
20     A.   And the inmates.  Yes.
21     Q.   And the inmates as well.  So it would be
22 concerning to you if the current manner in which the Sex
23 Offender Treatment and Monitoring Program is being
24 administered included aspects that were detrimental to
25 the well-being of inmates and staff and communities,

Page 30

1  correct?
2     A.   I'm sorry, could you reask that?  I
3  somewhat got lost there.
4     Q.   That's because there were five questions
5  in that one.
6           Let's shift gears a little bit.  Was there
7  a Sex Offender Treatment and Monitoring Program analog in
8  the State of Wisconsin?
9     A.   We had treatment and the sex offender
10 registry, yes.
11     Q.   Was there an indeterminate sentencing
12 scheme in the State of Wisconsin?
13     A.   No.
14     Q.   So there was no lifetime supervision?
15     A.   There could be lifetime hospitalization.
16 Civil commitments.
17     Q.   But very different from the criminal code
18 that we have here relative to sex offense and lifetime
19 supervision?
20     A.   Correct.
21     Q.   Ending the use or overuse of solitary
22 confinement within the Department will require
23 substantial financial resources, right?
24     A.   We haven't received a direct cost or
25 savings, but by adding a small number of staff, we were

Page 31

1  able to eliminate long-term solitary confinement.
2     Q.   And long-term solitary confinement is very
3  expensive, correct?
4     A.   Yes.
5     Q.   So by virtue of this new initiative and
6  adding some staff, you're able to relieve the Department
7  of long-term liabilities, essentially, from a financial
8  standpoint?
9     A.   We were able to shift financial
10 responsibilities to different areas.
11     Q.   And that happened in conjunction with
12 increased well-being of the inmates and safety within the
13 institutions themselves and public safety in the
14 community, right?
15     A.   I believe so, yes.
16     Q.   If a court were to order the Department of
17 Corrections to make Sex Offender Treatment and Monitoring
18 Program services available to qualified inmates who were
19 referred to treatment, would you do everything in your
20 power, as the executive director, to make that a reality
21 within the Department?
22     A.   I would rely on suggestions from the
23 attorney general's office on whether all legal remedies
24 had been taken care of or whether we should go to the
25 governor and the legislature for moneys.  But if

Page 32

1  ultimately that was the opinion of the attorney general's
2  office, yes.
3     Q.   Do you have any sense of the potential
4  scope of costs relative to staffing the Sex Offender
5  Treatment and Monitoring Program to accommodate the
6  current backlog?
7     A.   No, I do not.
8     Q.   Is there anything that you'd like to
9  clarify or change or expand upon that you've testified
10 about today?
11     A.   I would like to change the word "loop" to
12 crack or cracks.
13     Q.   In reference to your response that it
14 appears Mr. Tillery might have slipped through the
15 cracks?
16     A.   Yes.  And, also, to add to that, I also
17 read, which was a bit confusing to me, but I went through
18 this fairly quickly, was that I saw that -- I'm not sure
19 if it was the court, but showed a parole eligibility date
20 of 2022, and I'm not sure how that all played out in
21 this.
22     Q.   We can discuss some of this off the record
23 if you're interested, but Mr. Tillery had a parole
24 hearing at Sterling Correctional Facility and
25 subsequently went before for a full board review and was

Case No. 1:16-cv-00282-WJM-STV   Document 74-4   filed 02/06/18   USDC Colorado
pg 10 of 17

Thomas Dean Tillery vs.  
Rick Raemisch, et al.

Deposition of Rick Raemisch  
October 17, 2017

Page 33

1  denied parole, and some of the specific bases for his
2  denial was the fact that he has not progressed in
3  treatment and in the Sex Offender Treatment and
4  Monitoring Program.
5      THE DEPONENT: Thank you.
6      MR. WARREN: Thank you.
7      MR. HUSS: I just have a few clarification
8  questions.
9           EXAMINATION
10 BY MR. HUSS:
11     Q.   In discussing Mr. Tillery, you mentioned a
12 sentence change. Could you clarify what you mean by
13 sentence change?
14     A.   In his letter, he explained that he had
15 one of his sentences that was changed to a lesser --
16 lesser sentence.
17     Q.   Was that on appeal?
18     A.   Yes.
19     Q.   And when you discussed civil commitments
20 in Wisconsin, was that civil commitments for sex
21 offenders?
22     A.   Yes.
23     Q.   So there was a sentencing scheme that --
24     A.   There was a civil hearing process where if
25 it's determined that they are still a danger to the

Page 34

1  community, they can be placed in a secure hospital
2  indefinitely.
3      Q.   And was that still in effect in Wisconsin?
4      A.   As far as I know, yes.
5      Q.   And then there was some discussion about
6  placing programs at specific facilities. Are you
7  familiar with the process for placing a certain program
8  at a certain facility?
9      A.   In a sense. I mean, generally, it's --
10 things that had been talked about, is there space? Do we
11 think we can staff it? Do we have the moneys?
12 Typically, the Director of Prisons discusses that with
13 the wardens, and as part of that discussion, they'll
14 determine where, if, and when it can go.
15     Q.   And there was some discussion regarding
16 discretion of providing treatment. Is that discretion
17 with the providers in determining risk? Is that what you
18 were referencing?
19     A.   As far as -- I don't recall the -- where
20 that came up at.
21     Q.   Well, when an inmate with a sex offense
22 conviction comes into the system, who determines their
23 level of risk?
24     A.   I believe that our experts in that area
25 do.

Page 35

1      MR. HUSS: That's all I have.
2           EXAMINATION
3  BY MR. WARREN:
4      Q.   Just to clarify one point that Mr. Huss
5  brought up. The civil commitment system in the State of
6  Wisconsin entails some form of notice and hearing before
7  someone is detained indefinitely, correct?
8      A.   Correct.
9      MR. WARREN: Okay. That's all I have.
10 Thank you very much for your time.
11     THE DEPONENT: Thank you.
12     MR. HUSS: Thank you.
13           * * * * * * *
14     WHEREUPON, the foregoing deposition was
15 concluded at the hour of 11:14 a.m. Total time on the
16 record was 59 minutes.

Page 36

1      I, RICK RAEMISCH, the deponent in the above
2  deposition, do acknowledge that I have read the foregoing
3  transcript of my testimony and state under oath that it,
4  together with any attached Statement of Change pages,
5  constitutes my sworn statement..
6  
7  _____ I have made changes to my deposition
8  _____ I have NOT made any changes to my deposition
9  
10 
11                    _____
                              RICK RAEMISCH
12 
13 
14 
15 Subscribed and sworn to before me this _____ day
16 of _____.
17 
18      My commission expires: _____
19 
20                    _____
                              Notary Public

Case No. 1:16-cv-00282-WJM-STV  Document 74-4  filed 02/06/18  USDC Colorado
pg 11 of 17

Thomas Dean Tillery vs.
Rick Raemisch, et al.

Deposition of Rick Raemisch
October 17, 2017

Page 37

```
 1                REPORTER'S CERTIFICATE
 2
 3          I, Carol M. Bazzanella, a Registered
 4   Professional Reporter, Certified Realtime Reporter, and
 5   Notary Public within and for the State of Colorado,
 6   commissioned to administer oaths, do hereby certify that
 7   previous to the commencement of the examination, the
 8   witness was duly sworn by me to testify to the truth in
 9   relation to matters in controversy between the said
10   parties; that the said deposition was taken in stenotype
11   by me at the time and place aforesaid and was thereafter
12   reduced to typewritten form by me; and that the foregoing
13   is a true and correct transcript of my stenotype notes
14   thereof.
15          I further certify that I am not an attorney nor
16   counsel nor in any way connected with any attorney or
17   counsel for any of the parties to said action, nor
18   otherwise interested in the outcome of this action.
19          My commission expires:  February 10, 2020.
20
21
22          _____
            Carol M. Bazzanella
23          Registered Professional Reporter
            Certified Realtime Reporter
24          Notary Public, State of Colorado
25
```

Case No. 1:16-cv-00282-WJM-STV    Document 74-4    filed 02/06/18    USDC Colorado
pg 12 of 17

Thomas Dean Tillery vs.
Rick Raemisch, et al.

Deposition of Rick Raemisch
October 17, 2017

## $

**$12** 26:9

## 1

**10:30** 18:8
**10:34** 18:8
**10:54** 28:1
**11:01** 28:1
**11:14** 35:15
**16-11.7-105** 23:6,17
**18** 22:24
**18-1.3-1004** 22:22

## 2

**2** 23:1
**2015** 4:4 17:25
**2022** 32:20

## 3

**3** 13:22 23:2
**300** 5:4
**34,000** 19:7

## 4

**4** 18:11

## 5

**50-some** 19:7
**59** 35:16

## 7

**700-19** 13:15,17,20,23
**700-32** 14:24

## 8

**80** 26:1

## A

**a.m.** 18:8 28:1 35:15
**abolishing** 29:12
**access** 11:22 16:15
**accommodate** 4:19 32:5
**acquisition** 27:9
**acronyms** 6:15
**act** 11:8,10
**add** 32:16
**added** 7:10
**adding** 30:25 31:6
**additional** 8:19 17:15,17 18:18
**administered** 29:24
**administration** 15:7
**administrative** 13:16 14:20 15:7,12,15 21:24 22:2,7,13
**advocacy** 16:14
**agent** 13:5
**agree** 19:15
**ahead** 18:4
**allegations** 17:8
**aloud** 13:25
**altogether** 28:5
**analog** 30:7
**apologize** 18:17
**appeal** 33:17
**appears** 32:14
**appropriateness** 11:17
**approximately** 18:6 19:6 26:8
**area** 20:14 34:24
**areas** 22:5 26:15 27:2 28:25 31:10
**arose** 29:2
**arriving** 9:25
**articulated** 22:4
**aspects** 29:24
**assigning** 12:9
**assumption** 12:24 21:12,16,17
**attention** 7:24,25 13:22
**attorney** 31:23 32:1
**audit** 9:11,13,21 18:23
**auditor** 9:12,14
**authority** 5:1,10 11:4 21:25 23:20 24:11
**availability** 27:4
**awaiting** 15:22 16:2
**aware** 3:16 16:1,6,9 17:1 27:9

## B

**B8** 13:23
**back** 18:6
**background** 10:6
**backlog** 32:6
**based** 6:5 8:16 17:13
**bases** 33:1
**basic** 12:1
**basically** 7:19
**bed** 27:7,18
**Beebe** 10:15,19 15:15
**began** 28:19
**behalf** 3:8
**behavior** 11:16
**beneath** 5:18
**beneficial** 20:5,8,11
**benefit** 21:6
**Bennett** 7:19
**bit** 5:1 10:21 15:18 23:20 25:15 26:6 30:6 32:17
**board** 12:25 13:5 32:25
**bottleneck** 19:15
**break** 4:18 18:4 27:25
**breaks** 4:20,22
**bring** 6:5 7:23
**brought** 24:2,10 35:5
**budget** 7:9,11,12,19 8:13,25 9:4 26:9,11
**budgetary** 7:4 26:5,7

## C

**C.R.S.** 22:21 23:6
**California** 9:16
**call** 5:16
**called** 10:15 16:17
**capacity** 10:4 27:6,18
**care** 31:24
**carry** 22:3 25:10
**case** 3:21 6:15 8:9 10:15,22 15:16 16:24 17:2 25:19
**cases** 10:9
**caused** 24:20
**Center** 27:11
**chances** 12:21
**change** 15:18 17:19 24:12 32:9,11 33:12,13
**changed** 33:15
**Chapter** 18:11
**Cheyenne** 27:10
**circumstance** 24:1
**circumstances** 10:20 15:11 24:9
**cited** 22:25
**civil** 30:16 33:19,20,24 35:5
**claims** 17:2,4
**clarification** 33:7
**clarify** 4:15 5:23 32:9 33:12 35:4
**clear** 6:18
**client** 3:9 10:22
**clinically** 11:19
**code** 22:24 30:17
**collectively** 8:6
**Colorado** 3:14 9:12 10:10,12,24 11:5 19:4 22:19 26:16 28:24 29:4
**comfortable** 4:23 16:21
**commenting** 16:22
**commitment** 35:5
**commitments** 30:16 33:19,20
**Committee** 7:12 8:25
**communicated** 13:4
**communities** 29:14,19,25
**community** 19:12,19 20:1 21:1 31:14 34:1
**complaint** 4:1 16:24 17:7,9,13,17
**compliance** 22:13
**comply** 21:21
**compulsory** 23:8
**concerns** 7:20 28:11
**concluded** 35:15
**conditions** 28:12
**confinement** 28:5,13,16,24 30:22 31:1,2
**confining** 19:4
**confusing** 32:17
**conjunction** 31:11
**connection** 15:14
**considered** 11:17 26:23

Case No. 1:16-cv-00282-WJM-STV   Document 74-4   filed 02/06/18   USDC Colorado
pg 13 of 17

Thomas Dean Tillery vs.
Rick Raemisch, et al.

Deposition of Rick Raemisch
October 17, 2017

considers 12:9
constitutional 29:1
constitutionality 28:12
contact 16:14
content 20:14
continual 25:25
continue 28:23
contract 27:5,13
conviction 34:22
copies 18:18
correct 6:7,24 7:24 8:14,17 9:2,10,16 10:4,5 11:12 12:10 15:9,10 16:6,24 17:2 19:13 20:6,9,12,13, 17 21:22,25 22:4 25:13 26:12,16 28:5, 8 29:19 30:1,20 31:3 35:7,8
Correctional 3:11 25:21,22 32:24
Corrections 3:10,15 5:2,8,15 7:22 8:10,18 9:2 13:1,4 19:5 21:3 22:11 23:15 28:3,19 31:17
correctly 24:4,5
correspondence 16:8,11,13
cost 19:3 30:24
costs 32:4
counsel 3:21,25
count 5:20
couple 8:20,23
court 10:11 31:16 32:19
courts 10:11
cover 22:8
crack 32:12
cracks 32:12,15
creates 26:10 29:17
criminal 22:24 30:17

critical 26:4
criticisms 9:10 12:4
criticized 9:9
critiqued 9:8
CSOR 16:17
cumbersome 6:16
current 10:3 14:11 29:22 32:6
custody 3:9
cycle 5:16

D

danger 33:25
data 29:7
date 16:3 24:23 32:19
dated 4:4
day-to-day 14:14
deals 14:3 15:8
decided 5:18
decision 5:1 12:6 21:25 23:20 24:11 25:13 27:13
decision-making 5:10
decisions 14:16
declared 29:5
deficiencies 9:22
definition 8:22
degree 10:8
deleted 7:10
deliberative 9:1
denial 33:2
denied 24:24 33:1
Denver 26:16
department 3:10,14 5:1,8,15 6:6,11 7:21 8:10,13,18 9:2 11:10 13:1,4 19:4,11 21:3, 8,21 22:11 23:14 26:22,25 27:5 28:2,7, 17,19 29:17,18 30:22 31:6,16,21

Department's 14:10 24:6
departmental 6:9,23 7:3
depending 7:10 24:8 27:3
deponent 14:1 18:7 33:5 35:11
deposition 3:8,21, 22,25 8:16 13:12 14:21 18:9 22:17 25:18 35:14
depositions 4:7
deputy 8:5 9:6,19 14:15
deputy's 7:25 8:2
description 5:4 15:6
designation 13:9 14:7,12
designed 22:3
desire 7:6
detained 35:7
determinately 10:25
determination 21:4
determine 5:11 34:14
determined 7:7 33:25
determines 34:22
determining 34:17
detrimental 29:24
difference 10:24 14:6
differences 14:9
difficulty 27:23
direct 6:23 7:3 30:24
directed 16:11
directly 16:16
director 3:14 5:3 7:15,16,18,19 9:6,20 13:3 14:15 19:25 22:12 23:23 31:20 34:12

directors 7:6,13 8:6 9:6,20
disciplinary 24:19
discovery 25:19
discretion 21:3,9,18 23:14 34:16
discuss 32:22
discussed 9:20 18:5 20:25 27:20 33:19
discusses 34:12
discussing 18:23 19:2 25:3 33:11
discussion 18:25 34:5,13,15
discussions 27:16
District 10:11,12
division 7:5,13,15, 16,17 8:6 9:6,20
divisions 7:7
document 18:14
domino 25:6
dosage 20:20
drive 29:6,7
driven 27:17
driver 26:11
due 17:4,5
duly 3:3

E

earlier 16:23
easier 26:14
effect 13:6 25:6 34:3
effectuate 23:21
efficiency 6:14 19:24
efficient 29:17
efforts 19:11
eligibility 12:7 16:3 24:23 32:19
eliminate 28:5,22 31:1

end 14:4
Ending 30:21
ensure 4:22 22:12 23:24 24:6 25:4
entails 35:6
environment 29:18
essentially 31:7
established 6:1,3
evaluating 11:17
exact 15:24
EXAMINATION 3:5 33:9 35:2
examined 3:3
exception 23:23
executive 3:14 5:3 13:3 14:15 19:25 22:12 23:23 31:20
exhibit 13:12 14:1,21 18:9,11 22:17
expand 32:9
expensive 19:8 31:3
experience 4:23 6:6
experts 5:11 14:17 21:15 34:24
explain 12:1 20:23
explained 33:14
explanation 5:6
extended 29:9
extent 23:5,16
external 9:21 14:18

F

facilities 25:17 34:6
facility 3:11 25:21,22 26:2 27:10 32:24 34:8
fact 11:18 33:2
factors 12:9 28:15
fair 24:9
fairly 23:25 32:18

Case No. 1:16-cv-00282-WJM-STV    Document 74-4    filed 02/06/18    USDC Colorado
pg 14 of 17

Thomas Dean Tillery vs.                                                                    Deposition of Rick Raemisch
Rick Raemisch, et al.                                                                              October 17, 2017

fairness 19:24

familiar 10:9 11:3,7, 23 13:9,16 14:6,10 15:3,11,14 16:17 20:19 34:7

familiarize 13:24 23:11

family 16:14

feasibility 25:4

feel 16:21

fell 17:22

felt 29:10

figures 19:6

financial 20:5 30:23 31:7,9

find 26:14

findings 9:21

fine 18:20

focus 27:1

folks 19:12 20:1

foregoing 35:14

form 35:6

formal 5:4

frankly 21:14

full 32:25

funding 6:22,23 7:2, 3,20 8:7,19 9:22

**G**

gave 15:12

gears 15:18 23:19 30:6

general 7:1 13:19 16:19 19:3

general's 31:23 32:1

generally 34:9

GEO 27:10,14

give 7:1

Global 11:23,24 12:2 15:19,22 17:20 19:22 24:12,16 25:2,20

good 3:7 27:22

governor 28:23 31:25

governor's 7:9

Great 6:21

group 7:8 9:15 16:17 27:10,14

groups 16:14

guess 4:14 28:14

guidance 19:11

**H**

half-hour 18:5

hand 14:19 22:16

handled 24:4,5

happened 27:15 31:11

happy 4:16,19

harm 29:8

health 24:21

heard 10:15 19:6

hearing 32:24 33:24 35:6

Heil 10:16 15:16

held 27:16

Hickenlooper 28:23

high 6:2

high-level 5:6 7:2

higher 12:21

highlight 7:23

hired 28:22

Historically 25:24

hoping 4:25

hospital 34:1

hospitalization 30:15

hour 35:15

humanitarian 20:12

hundred 15:25

hundreds 11:14,21 25:20

Huss 18:19 33:7,10 35:1,4,12

**I**

idea 15:21 16:19

illness 28:21

important 4:14

impression 17:22

inability 24:25

incarcerated 3:10 19:17

included 29:24

includes 20:3

including 26:15 28:4

increase 27:6

increased 31:12

incumbent 22:12

indefinitely 34:2 35:7

independent 9:14, 15

indeterminate 10:23 12:14,17 21:11 22:25 30:11

indeterminately 10:25 11:11 14:8

individual 7:6 10:16, 25 11:1 23:21 24:12, 15

individuals 8:11 11:11,15 12:14 17:12 19:17 25:20

information 17:15, 18 25:13

infraction 24:20

initial 12:5

initiated 28:21

initiative 31:5

initiatives 28:4

inmate 24:2,7,19 34:21

inmate's 24:12

inmates 11:21 16:9, 15 29:20,21,25 31:12,18

input 6:10 7:5

instance 26:8

instances 23:22 29:10

instituted 28:8

institutional 11:16

institutions 29:13 31:13

interest 5:13,20

interested 5:23 28:19 32:23

internal 9:1 14:18

interval 18:5

introduce 3:12

involved 6:15 10:16

issue 16:9 26:4 27:18 29:1

issues 7:23 8:9 11:16 24:2,20 26:3,5, 7

**J**

Jennifer 7:19

job 5:4

Joint 7:12 8:25

Jordan 7:18,22

**K**

keen 5:13,19

Kellie 8:4

knowledge 12:12

**L**

L-low 13:23

land 8:25

large 25:19

large-scale 28:8

law 10:3,8

learn 17:11,16

leave 5:11 12:11 14:14,16 21:14

legal 10:6 22:3 31:23

legislature 31:25

lessening 29:12

lesser 33:15,16

letter 4:2,4 16:5 17:24 18:1 33:14

letters 18:2

level 34:23

liabilities 31:7

liberally 4:22

lifetime 11:7 30:14, 15,18

light 9:5

lines 12:5

list 6:2 7:8 8:7 11:23, 24 12:2,6,8 15:19,23 17:20 19:22,23 24:13,16 25:2,21

literally 25:20

location 26:21

locations 6:11 25:16

long 5:5 12:5

long-term 31:1,2,7

looked 24:3

loop 17:22 32:11

lost 30:3

lot 10:1

low 14:3,5 20:3

low-risk 20:21,25

**M**

made 8:13 12:6 23:23

make 14:16 21:3 25:7,12,13 27:16 31:17,20

Case No. 1:16-cv-00282-WJM-STV   Document 74-4   filed 02/06/18   USDC Colorado   pg 15 of 17

Thomas Dean Tillery vs.
Rick Raemisch, et al.

Deposition of Rick Raemisch
October 17, 2017

**making** 12:24

**management** 24:20

**management-level** 18:23

**managing** 29:16

**mandatory** 21:20

**manner** 8:10 29:22

**marked** 13:12 14:21 18:9 22:17

**massive** 25:6

**matter** 3:22 5:11 14:17 19:24 21:15

**mechanics** 12:1

**medical** 24:21

**meeting** 9:19

**meetings** 9:5

**Melissa** 7:17

**members** 16:14

**mental** 24:21 28:21 29:8

**mentioned** 5:19 16:23 33:11

**metropolitan** 26:15

**million** 26:9

**mind** 13:13 25:14

**minimize** 28:4

**minutes** 18:6 35:16

**mission** 16:20,22 29:11

**model** 24:18

**moment** 13:24

**moneys** 31:25 34:11

**monitoring** 5:21 6:12,17 12:19 18:12 21:10,19 23:13 29:23 30:7 31:17 32:5 33:4

**morning** 3:7

**motivated** 28:10,15

**motivation** 29:15

**Mountain** 27:11

**move** 28:16

**moved** 26:1

**moving** 28:4

---

**N**

**named** 17:7

**notice** 35:6

**number** 6:15 12:9 13:14 14:22 15:24 22:20,21 25:19 28:3, 8,25 29:10 30:25

---

**O**

**occur** 27:16

**occurring** 25:6

**offender** 5:7,21,25 6:12,16 9:8 12:13,19 13:6 15:1 18:12 21:10,19 23:3,13,25 26:19 27:21 29:23 30:7,9 31:17 32:4 33:3

**offenders** 10:13 11:4 13:10 14:4,6,7,11 15:22 16:1 20:21,25 21:4,5,11 23:21 33:21

**offense** 10:13,23 12:18 30:18 34:21

**offenses** 8:12

**offer** 6:11 25:22,23

**offered** 25:17

**office** 4:3 7:9 31:23 32:2

**operating** 22:11

**operations** 14:15

**opinion** 32:1

**opportunity** 3:20

**opposed** 27:18

**optimal** 19:25

**order** 8:24 31:16

**orientated** 14:18

**original** 4:1 10:1 16:24 17:9

**ostensibly** 12:8

**outdoor** 29:4

**overuse** 28:20,24 30:21

---

**P**

**pages** 5:4

**parole** 7:17 12:7,15, 21,25 13:5,7 14:12 16:3 19:12,19 20:1 24:23,24 32:19,23 33:1

**part** 19:10 20:15 23:4 24:24 27:13 28:11 34:13

**participant** 12:22

**participate** 8:12 11:18,20 21:5 24:25

**participated** 12:20, 22 16:3

**participating** 10:17 24:22

**participation** 17:12 19:16 21:6

**pending** 4:21

**Penitentiary** 29:4

**people** 12:6

**perceived** 6:6

**percent** 26:1

**period** 29:2

**periods** 29:9

**person** 12:22

**personnel** 6:9 8:19 26:3,12

**perspective** 21:2,8

**perused** 14:1

**physical** 29:8

**piece** 26:4

**place** 23:12

**placing** 26:23 34:6,7

**played** 32:20

**point** 9:18 35:4

**policies** 24:6

**position** 14:17

**possibly** 27:3

**potential** 28:12 32:3

**power** 31:20

**practice** 14:11

**practices** 20:16

**practicing** 10:3

**prepare** 3:24

**present** 7:9

**previous** 6:9 8:16 25:18

**primary** 26:11 29:11, 15

**printout** 22:18

**prior** 3:21 6:1 9:7,24 29:3

**priorities** 7:21 8:7

**prioritizing** 8:11 17:12

**priority** 6:2 7:7 12:9 14:4 24:12,16 25:1

**Prisons** 7:16 34:12

**private** 27:6

**problem** 8:21

**problems** 10:2 19:1

**procedural** 17:4

**process** 7:4 9:1 17:5 33:24 34:7

**professionals** 20:15

**program** 5:12,14,16, 25 6:12,17,18 10:18 11:18,19 12:19,20,23 16:4 18:13 21:6,10, 20 23:14 24:22,25 25:16,23 26:2 27:4,7, 21 29:23 30:7 31:18 32:5 33:4 34:7

**programming** 5:7 6:5 7:18 9:8 27:1,19

**programs** 5:3,10,13, 20,22,24 6:23 7:3,21 26:22,23 28:21 34:6

**progressed** 12:18 33:2

**prohibit** 24:22

**proposition** 19:8

**prospects** 12:15 13:6

**provide** 4:11 5:5 11:11

**provided** 4:21

**providers** 27:6 34:17

**providing** 5:7 21:9 34:16

**provision** 10:12 12:13 23:2,13 27:14

**public** 20:8 29:11,15, 16 31:13

**purely** 27:17

**purpose** 12:2 13:19

**purposes** 15:6

**pursuant** 23:3,6,17

**put** 12:6

---

**Q**

**qualified** 11:15 26:15 31:18

**qualifying** 8:11 10:13

**question** 4:11,14,21

**questions** 30:4 33:8

**quickly** 32:18

**quote** 14:3,4

---

**R**

**R-a-e-m-i-s-c-h** 3:15

**Raemisch** 3:2,13 14:23 18:10

**rarely** 16:12

**rate** 26:1

**read** 13:25 14:22,25 16:23 18:11 22:19 23:2,7,16 32:17

Case No. 1:16-cv-00282-WJM-STV   Document 74-4   filed 02/06/18   USDC Colorado
pg 16 of 17

Thomas Dean Tillery vs.
Rick Raemisch, et al.

Deposition of Rick Raemisch
October 17, 2017

**reading** 13:13 17:17

**reality** 31:20

**realize** 8:22

**reask** 30:2

**reason** 3:16 4:19 19:10

**reasons** 26:25 28:22

**recall** 8:15 9:24 10:19,20 16:16 19:2 24:1,17 34:19

**receive** 18:1 24:16

**received** 16:8,13 30:24

**receiving** 17:24 18:22

**recent** 8:22 27:9

**recently** 8:13 18:2 28:3

**recess** 18:8 28:1

**recidivism** 14:5

**recognize** 18:14 20:14

**recollection** 17:23

**recommendations** 6:8

**recommending** 14:11

**record** 32:22 35:16

**recreation** 29:4

**rectify** 19:1

**Reentry** 27:11

**refer** 6:17

**reference** 32:13

**referencing** 6:4 34:18

**Referral** 11:23,24 12:2 15:19,23 17:20 19:22 24:13,16 25:2, 20

**referred** 11:19 31:19

**referring** 9:11

**reform** 29:6,7

**reforms** 28:8,10,23

**refresh** 17:23

**regime** 11:4

**registry** 30:10

**regulation** 13:13,17, 20 14:20,22 15:3,7, 12,15 22:13

**regulations** 21:24 22:2,7,8

**related** 27:14

**relationship** 12:13

**relative** 8:14 20:17 23:21 30:18 32:4

**relevant** 22:11

**relieve** 31:6

**rely** 6:8 7:22 31:22

**remain** 19:17

**remaining** 17:2

**remediate** 9:22

**remedies** 31:23

**remedy** 10:2 12:4

**remember** 9:4 17:24 18:22,25

**remind** 8:2

**Renae** 7:18,22

**rephrase** 13:2 26:24

**report** 10:1 19:2

**reports** 12:5

**represent** 14:4

**request** 7:2 8:13,24 9:4 25:7,8

**requested** 8:18 24:15

**requesting** 25:1

**require** 30:22

**required** 23:4

**requires** 11:10

**research** 20:16,20

**resource** 14:4

**resource-intensive** 26:23

**resources** 6:24 30:23

**respect** 5:3 24:7

**response** 32:13

**responsibilities** 5:6 6:22 22:3 31:10

**responsibility** 20:16

**rest** 23:12

**result** 29:13,14

**review** 15:1 32:25

**reviewed** 4:1,2

**Revised** 22:19

**Rick** 3:2,13

**rise** 15:12

**risk** 14:5 20:3 34:17, 23

**Roberts** 7:17

**role** 5:2

**rule** 23:24

**running** 5:17

---

**S**

**safe** 20:3

**safely** 20:13

**safer** 29:13,14,17

**safety** 20:9 29:11,16 31:12,13

**sake** 6:14

**savings** 30:25

**scheme** 30:12 33:23

**scope** 32:4

**secretary** 28:18

**section** 13:25 23:4,6, 17

**secure** 34:1

**seemingly** 11:14

**sense** 7:2 17:10 19:3 24:8,19 25:8 28:14 32:3 34:9

**sentence** 10:23 12:17 17:19 22:25

23:5 33:12,13,16

**sentenced** 10:25 11:1,12 14:8 23:3

**sentences** 12:14 21:11 33:15

**sentencing** 11:4 30:11 33:23

**service** 29:16

**services** 6:12 7:18 21:20 26:22 27:7 31:18

**serving** 10:23

**sex** 5:20,24 6:11,16 8:11 9:8 10:12,23 11:4 12:13,18,19 13:6,10 14:6,7 15:1 18:12 20:21,25 21:9, 10,19 23:3,13 26:18 27:21 29:22 30:7,9, 18 31:17 32:4 33:3, 20 34:21

**sexual** 14:5

**shift** 23:19 30:6 31:9

**shortages** 26:10

**showed** 32:19

**significant** 28:4

**similarly** 11:21

**single** 19:5

**site** 6:11 25:16 26:21

**situated** 11:21

**situations** 14:16

**Slightly** 13:11

**slipped** 32:14

**slot** 25:1

**small** 30:25

**Solely** 15:6

**solitary** 28:5,16,20, 24 29:9,13 30:21 31:1,2

**someone's** 11:17

**sort** 9:1

**SOTMP** 6:18 8:12,14, 19 10:17 11:11,15,22 14:13 15:9,23 16:2,

15 17:13 19:16 21:5 24:13 25:16,23 27:1, 14

**sought** 9:22 17:18

**sounds** 26:14

**space** 17:21 27:4,7, 18,21 34:10

**speak** 3:20 17:21 26:6

**speaking** 3:25 4:12

**specific** 5:2,20 6:10 7:3,14 22:10 23:25 24:1 25:15 26:18,22 27:18 33:1 34:6

**specifically** 17:24 19:2 21:16

**speculate** 4:15

**spell** 3:12

**spelled** 3:15

**Springs** 26:16

**staff** 8:19 18:24 25:4, 7 26:1,2,15 29:25 30:25 31:6 34:11

**staffing** 26:3,12 27:23 32:4

**standpoint** 20:6,9, 12 31:8

**state** 9:12 10:10,11 27:2 29:4 30:8,12 35:5

**statement** 23:16

**States** 10:11

**statute** 21:20,22 22:4,10,14,18,20 23:10,12

**Statutes** 22:19

**statutory** 11:3 22:8, 20,21

**Sterling** 3:11 25:21, 22,23 32:24

**strong** 29:8

**studies** 29:7

**subject** 3:22 5:11 14:17,25 21:15

Case No. 1:16-cv-00282-WJM-STV   Document 74-4   filed 02/06/18   USDC Colorado
pg 17 of 17

Thomas Dean Tillery vs.
Rick Raemisch, et al.

Deposition of Rick Raemisch
October 17, 2017

**subsection** 13:23 14:3 23:2,8

**subsequently** 9:21 17:18 32:25

**substantial** 30:23

**substantive** 17:5

**successfully** 12:18 21:1

**suffering** 28:20

**suggestions** 31:22

**supervision** 11:8 30:14,19

**surprise** 17:9

**surrounding** 20:20

**sworn** 3:3

**system** 17:11 34:22 35:5

---

**T**

**taking** 3:8

**talk** 10:21 15:19 23:20 25:15

**talked** 34:10

**ten** 18:6

**tend** 14:17

**tenure** 6:10 23:22 28:7

**terminated** 10:17

**terminating** 15:8

**Termination** 15:1

**terms** 11:15 27:7

**testified** 3:3 32:9

**testify** 3:17

**testimony** 8:16 25:18

**things** 4:10 6:3 7:10 9:9 21:15 24:9 34:10

**Thomas** 3:9

**thought** 18:17

**thousand** 19:7

**Tillery** 3:9 4:2 10:22

11:14 17:25 24:18 32:14,23 33:11

**Tillery's** 10:22 16:5, 24 17:9

**time** 4:11 9:25 17:20, 21 19:17 23:11 25:25 29:9 35:10,15

**title** 18:11 22:20,24

**titled** 13:23

**today** 3:18 32:10

**told** 9:7 20:24 29:3

**tool** 28:16

**Total** 35:15

**track** 20:16

**Trani** 7:16

**transition** 19:12,18 20:1

**Travis** 7:16

**treated** 21:1 23:25

**treatment** 5:21 6:12, 17 10:13 12:10,14,19 13:6 14:13 15:2,8,22 16:2 18:12 19:16 20:17,21 21:10,19 23:5,13 26:19 29:23 30:7,9 31:17,19 32:5 33:3 34:16

**true** 26:18

**truthfully** 3:18

**turn** 13:22 23:1

**typically** 5:10,18 6:2 14:14 26:17 34:12

---

**U**

**ultimately** 8:25 21:25 27:15 32:1

**unable** 3:17 16:15

**unconstitutional** 29:5

**undergo** 23:5

**underneath** 20:15

**understand** 4:17,25 10:24 13:19

**understanding** 8:12,17 12:3 25:24

**Understood** 18:3

**undertaken** 19:11 28:3

**United** 10:11

**urban** 27:1

**utilize** 27:22

---

**V**

**vacancy** 26:1

**Vaguely** 20:22

**verbal** 18:25

**Verbatim** 13:18

**versus** 12:19 14:7 21:5

**violations** 17:5,6

**virtue** 17:16 31:5

---

**W**

**waiting** 12:5 19:23

**wardens** 34:13

**Warren** 3:6,7 18:3, 10,17,21,22 27:24 28:2 33:6 35:3,9

**Wasko** 8:4

**well-being** 29:25 31:12

**whatsoever** 14:13

**Wisconsin** 28:18 30:8,12 33:20 34:3 35:6

**word** 23:7 32:11

**words** 4:14

**working** 20:15

**wrong** 8:18

---

**Y**

**year** 19:5 26:9

**years** 8:20,23 9:18 12:7 29:3

**yesterday** 18:19

---

**Z**

**Zach** 3:7